STATE OF NORTH CAROLINA v. EDWARD LEE MOSES AKA EDDIE MOSES

No. 518A85

(Filed 2 April 1986)

**Rape and Allied Offenses § 4— relevancy of letter from defendant to victim's mother — probative value outweighs prejudice**

In a prosecution for first degree rape and vaginal intercourse by a substitute parent, a letter written by defendant to the victim's mother when defendant was in prison for unrelated offenses in which he stated, "I promise from the bottom of my heart that I will never, as long as I live, bother [the victim] any more if she stays with us," was relevant to show defendant's commission of the offenses with which he was charged, it being for the jury to determine whether defendant meant by the word "bother" that he would never engage in sexual activity again with the victim or, as defendant testified, that he would not again discipline her. Furthermore, if the jury should find that defendant was referring to sexual activity, the probative value of the letter was great and not outweighed by its prejudicial effect. N.C.G.S. 1A-1, Rule 8C-1, Rule 403.

APPEAL by defendant from judgment entered by *Albright, J.,* at the 1 April 1985 criminal session of Superior Court, STANLY

County. Defendant was convicted by a jury of first degree rape and of vaginal intercourse by a substitute parent. He was sentenced to life imprisonment for the rape offense and to a consecutive term of fifteen years for the other offense. Defendant appeals the life sentence as a matter of right pursuant to N.C.G.S. § 7A-27(a). His motion to bypass the Court of Appeals on the fifteen-year sentence was allowed by this Court on 10 September 1985. Heard in the Supreme Court on 13 February 1986.

*Lacy H. Thornburg, Attorney General, by Daniel C. Higgins, Assistant Attorney General, for the State.*

*J. H. Rennick for defendant-appellant.*

BILLINGS, Justice.

The defendant was convicted of raping Shanta Renee Hyatt on 15 February 1982 when the victim was eleven years old, the defendant being over the age of twelve and more than four years older than the victim, and of engaging in vaginal intercourse with her on 16 March 1984 while living in the home with her and her mother and having assumed the role of parent.

The victim testified to a pattern of sexual activity, which she said the defendant referred to as "training," over a period from February of 1982 until March of 1984, interrupted by periods when the defendant served time for convictions of unrelated offenses. The victim said that her mother knew about the sexual activity and on one occasion hid in the bedroom and observed the defendant undress the victim and disrobe before he discovered the mother's presence. The defendant denied any sexual contact with the victim. The victim's mother testified that she and the victim had made up a story about the defendant sexually abusing the victim which they were going to use if the defendant continued to associate with another woman, but when the mother decided not to go through with the false accusation, the victim persisted. She denied that the defendant was living with her and the victim in February of 1982 or between January and April of 1984, although he lived with them at other times.

The defendant brings forward for review only one question: Did the trial court commit prejudicial error in admitting into evidence, over objection, a letter which the defendant wrote to

the victim's mother? The letter was written at a time when the defendant was in prison for unrelated offenses. The portion of the letter to which the defendant objects is contained in the first paragraph of the letter which says:

> Dear Pamela: I truly hope this letter finds you and the children doing well and in the very, very best of health, but before I go any further let take [sic] the time to say I will not push the issued [sic] about Shanta. I though [sic] I made it clear in my other letter that I have nothing to say to that young lady. God will punish her and make her realize the mistake that she made. So let her do what she wants to do and go where she wants to go. I feel that it is way past time for playing games. It's time for us to get our lives together so if Shanta doesn't want to be a part of it, then let her go. *I promise from the bottom of my heart that I will never, as long as I live, bother her any more if she stays with us.* But if she still wants to go, I would never try to stop her. I just wanted her to be a part of the family, but it's almost as if she doesn't see it that way. [Emphasis added.]

The defendant especially complains that the underlined portion of the letter was ambiguous, irrelevant, and highly prejudicial. He relies on Rule 403 of the North Carolina Rules of Evidence which provides as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C.G.S. § 8C-1, Rule 403 (Cum. Supp. 1985).

The defendant contends that, while living with the victim and her mother, he would discipline the child and that when he said in the letter he would never bother Shanta again he meant that he would never punish her again; he was not referring to sexual activity with her.

The question then becomes a two-part question: (1) was the letter relevant, and (2) if so, was its probative value substantially outweighed by its prejudicial effect?

N.C.G.S. § 8C-1, Rule 401 (Cum. Supp. 1985) defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

What the defendant meant by the word "bother" was appropriately a matter for the jury to determine based upon the evidence. *See People v. Hamilton,* 41 Cal. 3d 408, 221 Cal. Rptr. 902, 710 P. 2d 981 (1985); *People v. Sabell,* 708 P. 2d 463 (Colo. 1985); *State v. Gortarez,* 141 Ariz. 254, 686 P. 2d 1224 (1984); *State v. Hinds,* 437 A. 2d 191 (Me. 1981); *Bakken v. State,* 489 P. 2d 120 (Alaska 1971). If there had been no evidence of sexual abuse by the defendant, there would be no basis upon which the jury could infer that the defendant was referring to sexual conduct by use of the word "bother." However, in this case there was evidence that the defendant had "bothered" Shanta by compelling her to engage in sexual intercourse, that upon his release from prison in 1983 he had told her that there would be no more sexual activity between them, but the sexual activity began again and continued until he returned to prison, and that Pamela, Shanta's mother, knew that the defendant was sexually abusing Shanta. It was reasonable for the jury to infer that he was referring to that conduct when he promised not to bother Shanta anymore if he was permitted to return to the home upon his second release from prison. Certainly, if the jury found that the defendant was referring in the letter to sexual intercourse, the evidence would tend to make the existence of the fact of his commission of the offenses with which he was charged more probable than it would be without the evidence. We find that the content of the letter was relevant.

The defendant further contends that the probative value of the letter was outweighed by its prejudicial effect and that, even if relevant, it should have been excluded nonetheless. We disagree.

As we have indicated above, if the jury determines that the defendant was referring to sexual activity when he used the word "bother," the letter is highly probative of the very question before the jury. The fact that it would prejudice the defendant because it would tend to convince the jury of his guilt is a reason for admitting, not for excluding, the evidence. Its probative value

for the purpose admitted is great because it is an admission by the defendant himself.

If, on the other hand, the jury should find that the defendant was *not* referring to sexual activity but was promising not to discipline Shanta anymore, the statement would be irrelevant but it also would have no prejudicial effect.

Essentially, the defendant would have us hold that because the words he chose are ambiguous, we are bound to accept his explanation of their meaning and to exclude the evidence because the jury might have given them a different meaning in light of Shanta's testimony of his prior sexual abuse of her.

In *State v. Robinson*, 310 N.C. 530, 313 S.E. 2d 571 (1984) this Court found that the jury could not properly convict the defendant of first degree rape when the only evidence of what the defendant did to the three-year-old victim was the victim's statement that "he put his ding-a-ling in my mouth. He stuck his finger in my thing right there (indicating)," the examining physician's testimony that a male sex organ could cause the vaginal condition he found in the child, and the defendant's statement "I did it, but don't let them hurt me." This Court did not find that the defendant's statement was not admissible; we concluded that even with his statement, which was ambiguous and required the jury to speculate as to what the defendant meant by "it," the evidence did not establish vaginal intercourse. That was obviously because there was no evidence which identified "it" as vaginal intercourse but positive evidence that the defendant had penetrated the victim with his finger, not his penis.

Also, in *State v. Freeman*, 307 N.C. 445, 298 S.E. 2d 376 (1983) this Court held that the lone statement by the defendant, "You shouldn't have enticed me" was insufficient, due to its ambiguity and virtual meaninglessness, to support a finding that he intended to rape the woman to whom he made the statement.

In neither of the cited cases was there other evidence explaining the ambiguous statement. It should be noted that in both of the cited cases, the evidence was not held inadmissible, only insufficient. Neither of these cases has a bearing on the question presented here, for there is no contention that the evidence in the instant case is insufficient to support a finding that the defendant

engaged in sexual intercourse with the victim. Whether the defendant meant that he would never engage in sexual activity again with the victim or that he would not again discipline her was a determination properly left to the jury.

The defendant contends that the issue is controlled by *State v. Phillips*, 283 N.C. 339, 196 S.E. 2d 270 (1973) in which this Court reversed a conviction of voluntary manslaughter because the trial judge had erroneously allowed into evidence a letter written by that defendant to the Director of Prisons. In the letter, the defendant indicated that she was seeking information for use in a story and wanted information on "a day in the life of a woman serving time for manslaughter." The defendant was a short story author and at the time the letter was written she discussed with her daughter-in-law a story which she anticipated writing in which she would use the information requested. The daughter-in-law typed the letter, as well as other letters and stories, for the defendant. The letter was written approximately a year before the defendant's husband was shot and killed during a domestic disturbance. This Court held that admission of the letter was prejudicial error because "[t]he legitimate purpose of the defendant's letter is explained by the State's witness as well as by the letter itself. The purpose was to obtain information for use in a story." *Id.* at 343, 196 S.E. 2d at 273. There was no ambiguity in the content of the letter, as there is in the instant case. Instead, the State attempted to prove, by use of the letter, a plan on the part of that defendant to kill her husband, although there was no evidence to support the existence of such a plan or to suggest that the purpose of the letter was not as stated. We find that case to be inapposite.

Finally, even if the trial judge erred in overruling the defendant's objection to introduction of the letter, the defendant waived the objection.

During direct examination of Pamela Hyatt, the victim's mother, she identified the letter as a letter in the defendant's handwriting which she received. Over the defendant's general objection, which did not specify the basis for the objection, the letter was received into evidence, but the record does not indicate that it was published to the jury.

During cross-examination of the defendant, the defendant, without objection, admitted that he had written the letter to Pamela Hyatt and that it contained the statement, "It's time for us to get our lives together so if Shanta doesn't want to be a part of it, then let her go. I promise from the bottom of my heart that I will never, as long as I live, bother her any more if she stays with us." On redirect examination, the defendant read almost the entire letter to the jury, including the above-quoted passage.

It is the well settled rule in this state that when evidence is admitted over objection but the same evidence is thereafter admitted without objection, the benefit of the objection ordinarily is lost. *State v. Van Landingham*, 283 N.C. 589, 197 S.E. 2d 539 (1973). Here it was the defendant's testimony, given without objection, that put the content of the letter before the jury.

For the reasons stated, we find that the defendant received a fair trial, free of prejudicial error.

No error.